# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

PATRICIA JO MCLEAN )
)
v. )  No. 3:14-01332
)  Senior Judge Wiseman
)
NANCY BERRYHILL,[1] )
acting Commissioner of the )
Social Security Administration )

## MEMORANDUM

### I. Introduction

Pending before the court is the Plaintiff's Motion For Judgment On The Administrative

Record (Docket No. 11). The Defendant has filed a Response (Docket No. 12) to the Motion,

and the Plaintiff has filed a Reply (Docket No. 14). For the reasons set forth herein, the

Plaintiff's Motion is DENIED, and the decision of the Social Security Administration is

AFFIRMED.

### II. Procedural Background

In August 2010, the Plaintiff filed an application for supplemental security income,

disability insurance benefits, and disabled widow's benefits under the Social Security Act.

(Administrative Record ("AR"), at 11, 131-134 (Docket No. 9)). The Plaintiff's application

alleged disability beginning on October 15, 2009. (*Id.*)[2] After receiving initial denials of the

---

[1]    Nancy Berryhill became acting Commissioner for the Social Security Administration
on January 23, 2017.

[2]    The Plaintiff filed a previous application for benefits, which was denied by an
administrative law judge on July 1, 2009. (*Id.,* at 70-81). The Plaintiff appealed that decision to
the Appeals Counsel, and ultimately to federal district court, but the decision was affirmed. *See*

application, the Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*)

The ALJ held a hearing on November 28, 2012 at which the Plaintiff appeared with a non-attorney representative and testified in support of her claim. (*Id.*, at 11, 26-59). A friend of the Plaintiff, as well as a vocational expert, also testified at the hearing. (*Id.*)

The ALJ issued a written decision on January 11, 2013, concluding that the Plaintiff was not disabled during the relevant time period. (*Id.*, at 8-25). In reaching her decision, the ALJ found as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.
>
> 2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.
>
> 3. The prescribed period ended on July 31, 2012.
>
> 4. The claimant has not engaged in substantial gainful activity since October 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 5. The claimant has the following severe impairments: bulging discs/low back syndrome, degenerative disc disease of the cervical spine, hepatitis C, chronic obstructive pulmonary disease, and seizure disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she

*Patricia Jo McLean v. Carolyn W. Colvin*, 3:11cv00236 (Docket Nos. 33, 34).

has the capacity to lift 15 to 20 pounds occasionally. For any given eight-hour workday, she can stand and walk for four hours. She has no sitting restrictions. She can perform push/pull actions only occasionally and must avoid concentrated exposure to airborne contaminants. The claimant can perform frequent postural activities except that she would be precluded from climbing ladders, ropes, or scaffolding, and permitted to balance only occasionally. The claimant must avoid unprotected heights and moving machinery because of additional limitations imposed by her epilepsy. She would be able to carry out at least simple directions, maintain concentration and persistence sufficient to perform routine and/or repetitive one through two-step tasks. Production pace work and assembly line work would be precluded. She would be unable to interact with the public on a regular basis, but can interact with co-workers and supervisors. She can adapt to gradual and infrequent changes.

8.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

9.   The claimant was born on June 8, 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404. 1563 and 416.963).

10.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

12.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

13.   The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR, at 13-21).

The Appeals Council denied the Plaintiff's request for review of the ALJ decision (AR, at

1-5), which became the final decision of the Social Security Administration ("SSA"). *Sims v.*

*Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083, 147 L. Ed. 2d 80 (2000). This action, seeking review of that decision, has been timely filed, and the Court has jurisdiction under 42 U.S.C. § 405(g) to adjudicate it.

## III. Review of the Record

At the hearing before the ALJ, the Plaintiff testified that she was 53 years old and had a ninth-grade education. (AR, at 30). According to the Plaintiff, she is unable to work because she cannot breathe, has a hard time doing anything socially, and is tired all the time. (*Id.*, at 30-31). The Plaintiff further testified that due to hip pain, she is unable to stand and/or walk for over 40 minutes, or to sit for over 45 minutes, in an eight-hour period. (*Id.*, at 31-32, 34). The Plaintiff estimated her pain level to be an eight on a scale of one to ten, with ten as the most severe. (*Id.*, at 33). The Plaintiff testified that she takes one to two naps per day that last an average of one hour. (*Id.*)

The Plaintiff indicated that she had been diagnosed with COPD [chronic obstructive pulmonary disease] and has been prescribed two types of inhalers to treat the condition. (*Id.*, at 34-35). According to the Plaintiff, she has reduced her smoking habit to a quarter of a pack of cigarettes per day. (*Id.*). The Plaintiff testified that her breathing issues limit her to 15 minutes of standing at a time. (*Id.*, at 35-36). The Plaintiff estimated that the maximum weight she could carry or lift would be 15 pounds. (*Id.*, at 37). When asked how her condition had changed since her previous hearing in 2009, the Plaintiff said that everything had gotten a lot worse, including her breathing, eyesight, and hip. (*Id.*, at 41-42). She also indicated that she now has constant headaches because of her neck. (*Id.*)

Jackie Hobdy testified that the Plaintiff is his fiancé and that they had been seeing each

4

other for four and one-half years. (*Id.*, at 43). According to Mr. Hobdy, he sees the Plaintiff every day. (*Id.,* at 44). Mr. Hobdy testified that the Plaintiff drove them to the hearing because he does not have a driver's license. (*Id.*) Mr. Hobdy explained that he is transported by either the Plaintiff or his mother to visit the Plaintiff every day. (*Id.*) Mr. Hobdy testified that the Plaintiff's hip pain and shortness of breath keep her from being able to work. (*Id.*) He explained that the Plaintiff does household chores, but it takes her a long time because she has to take intervals of rest. (*Id.,* at 45). Mr. Hobdy further testified that the Plaintiff takes Dilantin for seizures but he has not witnessed her have a seizure. (*Id.*) According to Mr. Hobdy, the Plaintiff has had episodes in which she says she feels a seizure coming on, but after applying ice and a cloth to her face, she says she feels better. (*Id.*, at 45-46). Since her previous hearing, Mr. Hobdy said, the Plaintiff's hip and lung issues have gotten worse. (*Id.,* at 46). Mr. Hobdy testified that the Plaintiff had reduced her smoking habit to three-quarters of a pack to one pack of cigarettes per day. (*Id.*)

After Mr. Hobdy testified, the ALJ asked the Plaintiff to retake the witness stand, and asked her if the medical records were correct that she told her doctor she had two seizures in February of 2012. (*Id.*, at 47-48). The Plaintiff said she did and that Mr. Hobdy was not at her house when the seizures occurred. (*Id.*, at 48-49).

The vocational expert, Pedro Roman, testified that the Plaintiff had worked as a cashier in the past, which is considered light work with a Specific Vocational Preparation rating of 3. (*Id.*, at 50). The ALJ asked Mr. Roman various hypothetical questions. (*Id.*, at 50-55). In response to a hypothetical that assumed the Plaintiff's age, education, work experience, and residual functional capacity as set forth above, Mr. Roman testified that the individual in the hypothetical would be able to perform light occupations with a sit/stand option, and with a 30% reduction in

the number of occupations in the economy. (*Id.*) Specifically, Mr. Roman testified, the individual would be able to work as a companion, file clerk, inspector and hand packager, and mail clerk. (*Id.*)

In her subsequent written opinion, the ALJ reviewed the medical evidence as follows:

On June 9, 2009, the claimant presented to the health department with complaints of seizure disorder. (Exhibit 4F). The claimant reported weekly episodes of loss of consciousness and shortness of breath. Treatment records note that the claimant denied having epilepsy, but rather experienced 'seizures' since 1998. (Exhibit 4F, p. 8). The nurse's diagnosis of the claimant was seizure, hepatitis C, chronic obstructive pulmonary disease, and tobacco abuse.

The claimant presented to Roy Johnson, M.D. for a consultative examination on December 27, 2010. (Exhibit 2F). The claimant reported a history of chronic obstructive pulmonary disease and seizure disorder. Dr. Johnson diagnosed the claimant with cervical spine syndrome, low back syndrome with radiculopathy, seizure disorder, hepatitis C infection, and chronic obstructive pulmonary disease. (*Id.*, at 3). X-rays of the claimant's lumbar spine were normal. (Exhibits 1F, p. 2 and 2F, p. 1). X-rays of the claimant's cervical spine revealed degenerative disc disease at C5-C6 through C6-C7. (Exhibits 1F, p. 1 and 2F, p. 1). On physical examination, the claimant had full range of motion of the shoulders, elbows, and wrists bilaterally. The claimant demonstrated full range of motion on the left hip, and 70 degrees flexion for the right hip. The claimant also demonstrated 3 out of 5 grip strength and full range of motion of his [sic] knees and ankles bilaterally.

In March 2011, the claimant's chest x-ray revealed that the heart size and pulmonary vascularity are within normal limits. (Exhibit 5F). In addition, there was no alveolar consolidation, effusion or pneumothorax, and no acute bony abnormality seen. The impression was no acute infiltrate. On April 27, 2011, the claimant returned to Dr. Johnson for an examination. (Exhibit 7F). The claimant reported chronic obstructive pulmonary disorder, seizure disorder, hepatitis C, chronic back pain, bulging disc in the neck and back, as well as depression. Vital signs were as follows: height – 67 inches; weight – 132 pounds; blood pressure – 135/69; pulse – 67; temperature – 96.8; and visual acuity without glasses – right 20/200, left 20/25, and both 20/25. The claimant's lung fields were clear to auscultation, no wheeze, rhonchi, or rales noted. (*Id.*, at 2).

In February 2012, the claimant presented to the health department for a hepatitis B vaccine and a medication refill of Dilantin. (Exhibit 18F). The claimant reported that she had a seizure three days prior to this visit. She stated that she was

watching television and all of a sudden, she woke up on the floor. A registered nurse diagnosed the claimant with several diagnoses, to include chronic obstructive pulmonary disease, tobacco, and seizure disorder. (*Id.*, at 2).

In a medical assessment for ability to perform work-related activities dated December 27, 2010, Dr. Johnson deemed the claimant able to occasionally lift 15 to 20 pounds. (Exhibit 2F). According to Dr. Johnson, the claimant can stand and walk for four out of eight hours with normal breaks. Dr. Johnson gave the claimant 'no sitting restrictions at this time.' On May 8, 2011, Dr. Johnson determined the claimant has the capacity to occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. (Exhibit 7F). For any given eight-hour workday, Dr. Johnson noted the claimant can stand and walk for at least two hours and sit for about six hours.

On May 23, 2011, Saul A. Juliao, M.D. conducted a physical, functional capacity assessment. (Exhibit 8F). Dr. Juliao deemed the claimant able to work at less than a full range of light exertion. Specifically, Dr. Juliao indicated that the claimant can occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds. For any given eight-hour workday, the claimant can stand, walk, and sit for about six hours, respectively. As for postural limitations, she can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (Exhibit 8F, p. 3). However, Dr. Juliao determined that the claimant should avoid climbing ladders, ropes, and scaffolds. Concerning visual limitations, the claimant is limited in depth perception and field of vision. According to Dr. Juliao, the claimant should avoid moderate exposure to vibration and all exposure to hazards. (*Id.*, at 5).

In a medical evaluation by Dr. Juliao on May 24, 2011, he found some worsening of the claimant's condition, which was substantiated by medical findings. (Exhibit 9F). Medical findings included no vision in the claimant's right eye, left eye - 20/20; and tenderness in L4-5 paraspinal area.

(AR, at 17-18).

## IV. Analysis

### A. Standard of Review

This court's review of the SSA decision to deny benefits is "'limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir.

2016)(quoting *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 405-06 (6th Cir. 2009)).

"Substantial evidence" constitutes "'more than a scintilla' but less than a preponderance" and is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In making that determination, the court is to examine the evidence in the record as a whole and "'take into account whatever in the record fairly detracts from its weight.'" *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016)(quoting *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). If the court finds substantial evidence to support the decision, it must affirm and "may not inquire whether the record could support a different decision." *Id.* The court may not resolve conflicts in evidence or decide questions of credibility. *Id.; Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the ALJ fails to follow agency rules and regulations, however, his or her decision is not supported by substantial evidence, even if the ALJ's conclusion may be justified based upon the record. *Miller*, 811 F.3d at 833.

B. The Five-Step Analysis

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether the claimant is disabled within the meaning of the Social Security

8

Act, the ALJ is to apply a five-step analysis as set forth in 20 C.F.R. § 404.1520(a). *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 627-28 (6th Cir. 2016). "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Id.*, at 627 (quoting *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009)). The analytical framework is as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Kepke,* 636 F. App'x at 627-28. The burden of proof is on the claimant through the first four steps of the analysis, but then shifts to the Commissioner, if the analysis reaches the fifth step, to "'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity. . . '" *Id.*, at 628 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004)).

In this case, the ALJ found the Plaintiff was capable of performing light work with certain limitations. (AR, at 20-21). The Social Security regulations define "light work" as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

## C. Plaintiff's Statement of Errors[3]

### 1. Failure to evaluate medical opinions

The Plaintiff first claims that the ALJ's residual functional capacity finding is unsupported by substantial evidence because she failed to evaluate all the medical opinions in the record, and because she failed to reconcile the differences in the opinions offered by Dr. Johnson. "Residual functional capacity" ("RFC") is an assessment of the claimant's "remaining capacity for work" once her limitations have been taken into account. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. § 404.1545; 416. 945. In determining the RFC, the ALJ is required to consider the combined effect of all of the claimant's ailments. 42 U.S.C. § 423(d)(2)(B); 20 CFR § 404.1545(e). *See also Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014). The RFC is to be based on all relevant medical and other evidence. *Howard*, 276 F.3d at 239; 20 C.F.R. § 404.1545; 416. 945.

The Plaintiff contends that, in fashioning the RFC, the ALJ erred in failing to consider the medical opinions offered by Dr. Kathryn Steele, Dr. Rebecca Sweeny, Dr. George Davis, Dr.

---

[3] The Plaintiff's appeal challenges the ALJ's conclusions regarding her application for disabled widow's benefits for the period ending July 31, 2012. She does not appear to challenge the ALJ's decision that she is not entitled to disability insurance benefits for failure to establish that she was disabled prior to September 30, 2005.

Nathaniel Robinson, and both opinions offered by Dr. Saul A. Juliao. The ALJ is required to

"evaluate every medical opinion and consider the following non-exhaustive factors in deciding

what weight to give each opinion: examining relationship, treatment relationship, the extent to

which medical signs and laboratory findings support the opinion, the consistency of the opinion

with the record as a whole, and the specialization of the doctor rendering the opinion." *Poe v.*

*Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 156.(6th Cir. 2009)(citing 20 C.F.R. §§ 404.1527(d),

416.927(d)).

The ALJ evaluated the opinions of Dr. Steele, Dr. Sweeny, and Dr. Davis in concluding

that the Plaintiff's mental impairment of adjustment disorder was non-severe because it did not

cause more than minimal limitation in her ability to perform basic mental work activities:

> S. Kathryn Steele, Psy.D./HSP administered a mental status examination on July
> 6, 2011. (Exhibit 10F). Dr. Steele diagnosed the claimant with adjustment
> disorder with depressed mood. (*Id.*, at 3). The claimant's current Global
> Assessment of Functioning (GAF) score was assessed at 53, indicating moderate
> difficulty in social and/or occupational functioning. DSM-IV-TR (2000 text
> revision). She stated that she had not been prescribed psychotic medications since
> 2005. The claimant denied current mental health concerns and reported a history
> of being prescribed Paxil, Xanax, and Zoloft through her former primary care
> physician.
>
> Dr. Steele observed that the claimant's gait was limping, which she attributed to
> her back pain. (Exhibit 10F, p. 2). The claimant reported that her driver's license
> was suspended in 2006, but she is eligible to have it reinstated. She indicated that
> she is capable of driving without difficulty pending her driver's license being
> reinstated. Dr. Steele estimated the claimant's estimated intellectual functioning
> within the low average range.
>
> As for Dr. Steele's medical source opinion, the claimant will be capable of
> recalling and understanding simple and complex directions. (Exhibit 10F). Dr.
> Steele noted that in a structured environment, the claimant demonstrated an ability
> to maintain concentration and carry out simple instructions. According to Dr.
> Steele, the claimant appeared capable of interacting with co-workers or
> supervisors on an appropriate level. She also appeared capable of responding

11

appropriately to changes in a routine and/or work setting.

> On July 18, 2011, Rebecca Sweeney, Ph.D. completed a Psychiatric Review Technique Form. (Exhibit 12F). Dr. Sweeney indicated that the claimant has 'mild' degrees of limitation with restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. (*Id.*, at 11). However, Dr. Sweeney determined that the claimant has no limitation with difficulties in maintaining social functioning. According to Dr. Sweeney, the claimant has experienced no episodes of decompensation. Dr. Sweeney concluded that the claimant's mental impairment is not severe. (Exhibit 12F, p. 1).

> On September 1, 2011, George Davis, Ph.D. submitted a medical evaluation of the claimant. (Exhibit 14F). After review, Dr. Davis documented that the claimant alleged no worsening of mental impairments. As a result, Dr. Davis affirmed the initial mental assessment by Dr. Sweeney.

(*Id.*, at 14-15).

Applying these opinions in the context of the four broad functional areas set out in the disability regulations for evaluation of mental disorders, the ALJ concluded that the Plaintiff had mild limitations in "activities of daily living," and "concentration, persistence, or pace," and had no limitations in "social functioning" and "episodes of decompensation." (*Id.*, at 15-16). Based on these findings, the ALJ determined that the Plaintiff's medically determinable mental impairment was non-severe. (*Id.*) The ALJ explained, however, that the RFC assessment reflects the degree of limitation she found in the mental function analysis. (*Id.*, at 16).

The Plaintiff contends that the ALJ failed to evaluate the weight given to these opinions and explain their impact in her decision when determining her RFC. Although the ALJ did not repeat the extended discussion of these three opinions in the RFC section of the opinion, however, she clearly incorporated their opinions regarding the Plaintiff's limitations in her RFC finding. As part of the RFC, the ALJ found that the Plaintiff "would be able to carry out at least simple directions, maintain concentration and persistence sufficient to perform routine and/or

repetitive one through two-step tasks." (*Id.*) She found that "[p]roduction pace work and assembly line work would be precluded" and that the Plaintiff would be "unable to interact with the public on a regular basis, but can interact with co-workers and supervisors." (*Id.*) The ALJ also found that the Plaintiff "can adapt to gradual and infrequent changes." (*Id.*) These findings are obviously based on Dr. Steele's opinion that the Plaintiff would be capable of: recalling and understanding simple and complex directions; maintaining concentration and carrying out simple instructions in a structured environment; interacting with co-workers or supervisors on an appropriate level; and responding appropriately to changes in a routine and/or work setting. (*Id.*, at 14). *See Poe*, 342 Fed. App'x, at 157 (ALJ is not required to recite the medical opinion of a physician verbatim in her residual functional capacity finding).

The RFC is also consistent with Dr. Sweeney's opinion, as well as Dr. Davis's opinion, that the Plaintiff had mild limitations in "activities of daily living," and "concentration, persistence, or pace," and had no limitations in "social functioning" and "episodes of decompensation." (*Id.*, at 15). The Plaintiff does not specify any aspect of these opinions that should have been included but were not. Thus, her argument with regard to these three opinions is without merit.

As for Dr. Juliao, the Plaintiff contends that, although the ALJ discussed the medical opinion provided by Dr. Juliao on May 23, 2011, she failed to evaluate the opinion he provided the next day, on May 24, 2011. As set forth above, the ALJ discussed Dr. Juliao's May 23, 2011 "physical, functional capacity assessment" and explained that he deemed the Plaintiff to be able to work at less than a full range of light exertion. (*Id.*, at 18). The ALJ noted that, according to Dr. Juliao, the Plaintiff could: occasionally lift and/or carry 20 pounds and frequently lift and/or

13

carry 10 pounds; stand, walk, and sit for about six hours in an eight-hour workday; and

frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (*Id.*) As for

limitations, the ALJ noted that Dr. Juliao opined that the Plaintiff: should avoid climbing

ladders, ropes and scaffolds; is limited in depth perception and field of vision; and should avoid

moderate exposure to vibration and all exposure to hazards. (*Id.*) The ALJ then explained that, in

his medical evaluation of the Plaintiff on May 24, 2011, Dr. Juliao found some worsening of the

Plaintiff's medical conditions, which included "no vision in the claimant's right eye, left eye-

20/20; and tenderness in L4-5 paraspinal area." (*Id.*)

> In evaluating the medical evidence, the ALJ addressed Dr. Juliao's opinion as follows:

> As for the opinion evidence, the undersigned gives great weight to the opinion of
> Dr. Johnson where he deems the claimant able to occasionally lift 15-20 pounds.
> This opinion is consistent with the objective medical evidence. Dr. Johnson also
> had the opportunity to examine the claimant. On the other hand, little weight is
> given to the opinion of Dr. Juliao, who did not examine the claimant. Dr. Juliao
> determined that the claimant can sit for six hours of an eight-hour workday.
> However, Dr. Johnson found that the claimant has no sitting restrictions.

(*Id.*, at 19).

A fair reading of the ALJ's decision indicates that she included both Dr. Juliao's

assessments – conducted one day apart - in her conclusion that his opinion should be given little

weight.[4] Neither of the assessments were based on a physical examination of the Plaintiff and the

ALJ explained that that factor led to her decision to give greater weight to the opinion of Dr.

Johnson.

Finally, the Plaintiff argues that the ALJ failed to mention the medical opinion of Dr.

---

[4] Dr. Juliao himself appears to tie the two assessments together. In his May 24, 2011
assessment, Dr. Juliao specifically refers to his assessment on May 23, 2011 as providing the
basis for his conclusions. (*Id.*, at 229).

Robinson. Dr. Robinson provided a one-page medical opinion on September 11, 2011, which was based on a review of the Plaintiff's file and states: "I have reviewed all the evidence in file and the physical assessments of 5/23/11 and 5/24/11 are adopted." (*Id.*, at 265). The assessments to which Dr. Robinson refers are presumably those of Dr. Juliao.

Although the ALJ did not discuss the opinion of Dr. Robinson, her failure to do so does not undermine her decision. The Sixth Circuit has explained that "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). The ALJ implicitly assessed little weight to the opinion of Dr. Robinson for the same reason she assessed little weight to the opinion of Dr. Juliao, upon which Dr. Robinson relied in reaching his opinion. The ALJ's failure to specifically discuss Dr. Robinson's opinion is harmless given that her analysis is obvious from the record.

2. The differences in the opinions of Dr. Johnson

Next, the Plaintiff argues that the ALJ failed to reconcile the differences between the opinions given by Dr. Roy Johnson. As noted above, Dr. Johnson examined the Plaintiff on December 27, 2010, and as part of his narrative report of that examination, he opined as follows:

> Ms. McLean may occasionally lift 15 to 20 lbs. She may stand and walk for four out of eight hours with normal breaks. She has no sitting restrictions at this time. She should continue to see her doctor in regards to her various medical conditions and her work activities should not exceed any restrictions placed on her by her treating physician.

(AR, at 182). Dr. Johnson examined the Plaintiff again on April 27, 2011, and as part of a questionnaire with multiple choice answers he completed after that visit, he opined that the

15

Plaintiff could occasionally lift and/or carry 20 pounds and could frequently lift 10 pounds. (*Id.*, at 210). In answer to a question regarding how long the Plaintiff could stand and/or walk with normal breaks in an eight-hour workday, Dr. Johnson checked the box for "[a]t least 2 hours" rather than the other choices offered: "[l]ess than 2 hours," "[a]bout 6 hours," or [c]annot assess." (*Id.*, at 215). In answer to a question regarding how long the Plaintiff could sit with normal breaks in an eight-hour workday, Dr. Johnson checked the box for "[a]bout 6 hours" rather than the other choices offered: "[l]ess than 6 hours" or [c]annot assess." (*Id.*) As part of the RFC, the ALJ adopted Dr. Johnson's opinion that the Plaintiff could stand and walk for four hours, and had no sitting restrictions. (*Id.*, at 16). The Plaintiff contends that the ALJ erred in failing to address the changes in Dr. Johnson's opinion on these limitations as reflected in the second report.

The court is persuaded, however, that the ALJ reasonably relied on Dr. Johnson's first opinion in fashioning the RFC. As described above, Dr. Johnson's second assessment did not include the physician's narrative explanation of his findings. Instead, the physician was presented with multiple choice answers that did not mirror his prior explanation. The question regarding the Plaintiff's ability to stand and/or walk did not provide a choice for "four hours," and his choice of "at least two hours" did not contradict the narrative opinion in that regard. The question regarding the Plaintiff's ability to sit did not provide a choice for "no sitting restrictions," and his choice of "about six hours" was the closest choice to his narrative opinion. Under these circumstances, the court concludes that the ALJ did not err in relying on Dr. Johnson's narrative opinion in fashioning the RFC. *See, e.g., Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x, 468, 474-75 (6th Cir. 2016)(noting that less weight may be accorded a physician's "check-box

analysis" unaccompanied by explanation).

### 3. Failure to consider Plaintiff's vision impairment

The Plaintiff contends that the ALJ erred in failing to consider her vision impairment as severe or to otherwise include it as a limitation in the RFC. With regard to the Plaintiff's vision, as set forth above, the ALJ noted Dr. Johnson's evaluation on April 27, 2011, which found that the Plaintiff had "[v]isual acuity without glasses: Right 20/200, left 20/25, and both 20/25." (*Id.*, at 17, 211). Later in the evaluation, Dr. Johnson indicates that the Plaintiff had no limitations with regard to vision. (*Id.*, at 215). In his previous evaluation on December 10, 2010, Dr. Johnson found that the Plaintiff had "[v]isual acuity without glasses: Right no vision was noted, left 20/30, and both 20/30." (*Id.*, at 181).

The ALJ also noted Dr. Juliao's evaluation on May 23, 2011, which found as follows regarding the Plaintiff's vision: "12/27/10 PE unremarkable except for right eye no vision. LE 20/30." (*Id.*, at 18, 218). This finding was presumably based on Dr. Johnson's physical examination of the Plaintiff on December 27, 2010. Later in the evaluation, Dr. Juliao refers to this finding, and states that the Plaintiff has "monocular vision only." (*Id.*, at 220).

In her decision, the ALJ explained that she accorded more weight to Dr. Johnson's opinion than to Dr. Juliao's opinion but she did not specifically address the Plaintiff's contention that her vision constitutes an impairment in fashioning the RFC. (*Id.*, at 19). The court is persuaded that such an omission is harmless, however, because the ALJ's opinion clearly reflects that she relied on Dr. Johnson's April 27, 2011 opinion that the Plaintiff had no limitations with regard to vision. As the ALJ explained, Dr. Juliao's findings with regard to vision were not based on a physical examination of the Plaintiff, but instead were based on her medical records,

17

specifically Dr. Johnson's examination. The Plaintiff has not cited any other objective medical

evidence or medical opinion that would support a finding that she has a severe or limiting vision

impairment. Thus, the court concludes that there was substantial evidence in the record to

support the ALJ's determination that Plaintiff's vision impairment was not severe and should not

be included as a limitation in the RFC.

### 4. Failure to support credibility determination with substantial evidence

The Plaintiff argues that the ALJ failed to provide substantial evidence for her

determination that Plaintiff's statements concerning the intensity, persistence and limiting effects

of her symptoms should not be fully credited. An ALJ's analysis of the credibility of a claimant is

accorded "'great weight and deference particularly since the ALJ has the opportunity, which we

do not, of observing a witness's demeanor while testifying.'" *Sorrell v. Comm'r of Soc. Sec.*, 656

F. App'x 162, 173 (6th Cir. 2016)(quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003)). Although subjective complaints of a claimant can support a claim for disability,

those claims may be discounted if they are inconsistent with the objective evidence in the record.

*Id.*

In evaluating the Plaintiff's subjective complaints about the intensity and persistence of

symptoms, such as pain, the ALJ is to consider such factors as: (1) the claimant's daily activities;

(2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating

and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication

taken to relieve the symptoms; (5) treatment, other than medication received, to relieve the

symptoms; (6) measures used to relieve the symptoms; and (7) other factors concerning

functional limitations and restrictions as a result of the symptoms. 20 C.F.R. §§ 404.1529(c),

416.929(c); Soc. Sec. Rul. 96-7p.

As set forth above, the Plaintiff testified at the hearing that due to her hip pain, she is unable to stand for more that 40 minutes, and is unable to sit for more than 45 minutes. The Plaintiff later testified that her breathing problems keep her from standing for more than 15 minutes at a time. In addition, the Plaintiff testified that she suffered constant headaches because of her neck condition.

Addressing the Plaintiff's testimony in her written decision, the ALJ explained that the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (AR, at 18). The ALJ explained that the medical evidence in the record showed an isolated finding of degenerative disc disease, but the X-rays on the chest and lumbar spine were within normal limits. (*Id.,* at 19). In addition, a physical examination revealed a full range of motion for the Plaintiff's left hip, shoulders, elbows, wrists, knees and ankles; and 70 degrees flexion for the right hip. (*Id.*) The ALJ also explained that the Plaintiff's complaints to medical staff regarding the occurrence of seizures and the extent of reduction in her cigarette smoking were contradicted by Mr. Hobdy. (*Id.*)

The Plaintiff argues that the medical evidence supports her testimony because one of the X-rays indicates a mild disc space narrowing and an overall impression of degenerative disc disease. (AR, at 178). The Plaintiff also points out that in the December 27, 2010 evaluation, Dr. Johnson noted that the Plaintiff had "[t]enderness to palpation L4-L5 paraspinal area" and a limped gate. (*Id.*, at 181). Dr. Johnson's impressions included cervical spine syndrome, and low back syndrome with radiculopathy. (*Id.,* at 182). Finally, the Plaintiff points out that she sought treatment from Dr. Ponce every month from August 2011 to October 2012. (*Id.,* at 304-331).

In her opinion, the ALJ noted the findings in the medical records and explained that they simply did not support the Plaintiff's testimony regarding the intensity and limiting effects of her symptoms. The ALJ's explanation for reaching that conclusion is more than sufficient. As for her visits to Dr. Ponce, the Plaintiff has pointed to nothing in the progress notes and other medical records from Dr. Ponce that would support her description of the intensity of her symptoms.

The Plaintiff also contends that the ALJ erred in relying on the minor discrepancies between her testimony and Mr. Hobdy as to the amount of cigarettes she smokes daily and the number of seizures she has suffered in assessing her credibility. In her opinion, however, the ALJ noted these discrepancies as part of her overall assessment of the Plaintiff's credibility and did not attach more importance to the discrepancies than they were due.

Finally, the Plaintiff argues that the ALJ failed to consider her testimony about the restrictions on her daily activities. In her opinion, however, the ALJ summarized the Plaintiff's testimony about her pain, her difficulty breathing, and the limiting effect it had on her ability to sit, stand, and sleep. (*Id.,* at 18). She simply concluded that the other evidence in the record did not support the Plaintiff's testimony. The court is persuaded that substantial evidence supports the ALJ's credibility determination.

5. Reliance on the answer to an incomplete hypothetical question

Finally, the Plaintiff argues that the ALJ's failure to properly fashion the RFC and to properly assess the Plaintiff's credibility, as she contends above, led her to pose a hypothetical to the vocational expert at the hearing that failed to include all her limitations. For the reasons set forth above, the court concludes that substantial evidence supports the ALJ's determinations regarding the RFC and the Plaintiff's credibility. Accordingly, the court is not persuaded that the

ALJ's decision rested on the answer to an incomplete hypothetical question.

In sum, the Court concludes that the decision of the Social Security Administration is supported by substantial evidence on the record as a whole, and should be affirmed.

## V. Conclusion

For the reasons set forth herein, the Plaintiff's Motion For Judgment On The Administrative Record (Docket No. 11) is denied.

It is so **ORDERED.**

_____
THOMAS A. WISEMAN, JR.
U.S. District Judge